UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BROAN-NUTONE LLC,<br><br>　　　　　Defendant. | Case No. 3:23-cv-05622-TMC<br><br>ORDER GRANTING SUMMARY JUDGMENT |

## I.　　INTRODUCTION

This case arises from a fire that broke out in Charlotte Frankele's residence on April 18, 2022. Plaintiff Allstate Indemnity Company, as Ms. Frankele's subrogee, filed a product liability suit in Pierce County Superior Court against Defendant Broan-Nutone LLC. Dkt. 1. Plaintiff alleged that the fire was caused by a Broan fan designed, manufactured, and/or sold by Defendant in a defective and unreasonably dangerous condition. *Id.* Defendant moves for summary judgment, arguing that Plaintiff's claim is barred by the Washington Product Liability Act's ("WPLA") statute of repose, which provides that a product seller is not liable to a claimant for harm occurring after the product's useful safe life has expired. Dkt. 22. Because Plaintiff has not presented any evidence rebutting the WPLA's presumed twelve-year safe life, and because

ORDER GRANTING SUMMARY JUDGMENT - 1

the fire occurred twenty-one years after the fan was first delivered, Defendant asserts it cannot be liable for the damages as a matter of law. *Id.*

Plaintiff responds that Defendant waived its statute of repose defense when it failed to pursue the defense during initial disclosures, written discovery, and depositions of Plaintiff's experts. Dkt. 25. Plaintiff asks that even if the Court finds that Defendant properly raised and pursued this affirmative defense, the Court should allow Plaintiff's expert, Sam Shuck, to opine that the fan at issue was within its safe life at the time of the fire. *Id.*

The Court concludes that Plaintiff has failed to rebut the fan's presumptive twelve-year useful safe life by a preponderance of the evidence as required by the WPLA. Thus, the Court GRANTS Defendant's motion for summary judgment.

## II.    BACKGROUND

On April 18, 2022, a fire broke out in Ms. Frankele's laundry room in her residence in Gig Harbor, Washington. Dkt. 23-3 at 2, 4. The fire department crew reported that the fire originated in the clothes hamper near the utility sinks but could not identify the source of ignition. *Id.* at 4. Ms. Frankele informed the fire crew that she was asleep when her dog began barking and when she got up, she saw an orange glow of fire in the laundry room and smoke pushing through the door. *Id.* She left her home and called 911 from her neighbor's residence. *Id.*

The next day, Allstate Insurance Company representative Scott Roberts conducted an initial inspection of the damages. Dkt. 23-1 at 29. He observed that the "fire originated within the laundry room with no signs of fire extension into the adjacent hallway or garage" and "the fire damage was found localized to the ventilation fan and additional fire damage on various items located below the ventilation fan." *Id.*

On April 29, 2022, the parties completed a joint scene inspection with Sam Shuck representing Allstate Insurance Company and Clinton Carman representing Broan. *Id.* at 31.

ORDER GRANTING SUMMARY JUDGMENT - 2

Inspectors noted that "areas of fire damage within the laundry room were largely limited to the ceiling-mounted ventilation fan and a small area of the floor and the contents below the fan. . . . The ceiling-mounted dome light fixture, the washer and dryer, and the various switches and outlets within the room showed relatively little damage from the fire other than minor melting and the deposition of soot and smoke. No obvious signs of electrical damage, such as overheating or arcing were apparent on these items." They observed that "[t]he fan grille had melted and burned, and the plastic remains were visible on the floor directly below fan unit. The rotor from the fan motor had also fallen out after the bearing housings melted. The plastic fan impeller had also been consumed by the fire." *Id.*

A joint-party evidence examination was later conducted on September 28, 2022, and from January 30, 2023 through February 2, 2023. *Id.* at 35–44. Plaintiff's examiner, Scott Roberts, opined "[u]ltimately, the patterns of fire travel within the laundry room, availability of ignition sources, statements made by the insured, and prior testing performed by Jensen Hughes all show that the fire originated from within the Broan 696N ventilation fan on a more probable than not basis." *Id.* at 44. Sam Shuck, another Plaintiff's examiner, similarly concluded that "[t]he cause of the fire was a failure of the motor within the Broan-Nutone 696N ventilation fan in the laundry room of the Frankele residence. This failure was due to overheating that resulted in an internal electrical failure caused by a design and/or manufacturing defect." *Id.* at 51.

The Broan fan was installed in 2001, the same year the home was constructed and purchased by Ms. Frankele. *Id.* at 24; Dkt. 23-5 at 3. Inspectors from both parties also observed that the "laundry room ventilation fan was a Broan Model 696N unit with a date code of '01F', which corresponds to a manufacturing date of June 2001." Dkt. 23-1 at 31; *see also* Dkt. 23-4 at 3.

Ms. Frankele maintained a homeowner's insurance policy with Allstate Insurance Company and submitted a claim for damages to the property caused by the fire. Dkt. 1 at 8. After Ms. Frankele satisfied the $750.00 deductible, Allstate indemnified Ms. Frankele for the claim in the amount of $204,646.59. *Id.* Allstate then sued Defendant Broan to recover the amount paid. *See generally* Dkt. 1.

During the discovery period, Plaintiff disclosed three expert witnesses—Sam Shuck (senior electrical engineer), Scott Roberts (lead fire investigator), and Jonathan Contreras (senior metallurgist and material engineer). *See* Dkt. 23-1; Dkt. 23-7. Each expert witness testified that their report covered the entirety of their opinions and did not intend to provide additional opinions. *See* Dkt. 23-4 at 4; Dkt. 23-6 at 3; Dkt. 23-7 at 3. All depositions were completed by the discovery deadline on December 20, 2024. *See* Dkt. 21 at 1.

On January 20, 2025, Defendant moved for summary judgment on Plaintiff's product liability claim. Dkt. 22. Plaintiff responded, Dkt. 25, and Defendant replied, Dkt. 28. The motion for summary judgment is fully briefed and ripe for the Court's consideration.

### III.   JURISDICTION

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the opposing parties are citizens of different states. Plaintiff asserts that it is entitled to damages for insurance payments made to Ms. Frankele in the amount of $204,646,59, *see* Dkt. 1 at 9, which exceeds $75,000. In Washington state, it is the insured, not the insurer, who is the real party of interest for purposes of diversity citizenship. *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1092–93 (9th Cir. 2004) ("But the reimbursement right that exists between the insurer and its policy holder does not, under Washington law, detract from the substantive right of the insured, and only the insured, to sue for tort damages in subrogation actions.") (citing cases). As provided in Plaintiff's complaint and

Defendant's corporate disclosure statements, Ms. Frankele is a citizen of Washington and Defendant is a citizen of Delaware and Missouri, establishing complete diversity. *See* Dkt. 1 at 8; Dkt. 2. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

## IV.     DISCUSSION

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party may fulfill its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), or by producing "evidence negating an essential element of the nonmoving party's claim." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry their ultimate burden of persuasion, the movant "must persuade the court that there is no genuine issue of material fact." *Id.* The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

### B.     WPLA's Statute of Repose

"The Washington Product Liability Act . . . imposes liability on a product manufacturer if its product is not reasonably safe as designed (design defect claim) or because adequate warnings or instructions were not provided (failure to warn claim)." *Neher v. II Morrow Inc.*, 145 F.3d

1339, at *1 (9th Cir. 1998) (unpublished). The Act, however, also contains a statute of repose which provides:

> (1) Useful safe life. . . . a product seller shall not be subject to liability to a claimant for harm under this chapter if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.
>
> "Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. For the purposes of this chapter, "time of delivery" means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold. . . .
>
> (2) Presumption regarding useful safe life. If the harm was caused more than twelve years after the time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by a preponderance of the evidence.

RCW 7.72.060(1)–(2).

"The Legislature's intent in including a statute of repose in RCW 7.72.060 was to provide some certainty in the area of manufacturers' and sellers' long term exposure for product-related claims while, at the same time, preserving claims based upon product use which is reasonable in light of the product's unique characteristics." *Morse v. City of Toppenish*, 46 Wn. App. 60, 64–65, 729 P.2d 638 (1986); *see also 1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 144 Wn.2d 570, 579, 29 P.3d 1249 (2001) ("Manufacturers have liability under products liability law, an independent area of law separate from basic negligence or breach of contract, and this area of law has its own statutes of limitation, which are keyed to the useful life of the product.").

Specifically, the statute states that a "product seller is not liable for harm under the product liability act if the harm was caused after the product's useful safe life [has] expired." *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1067 (9th Cir. 1994) (internal quotations omitted). A product's safe life begins at the "the time of delivery of a product to its first purchaser[.]"

ORDER GRANTING SUMMARY JUDGMENT - 6

RCW 7.72.060(1); *see Allstate Prop. & Cas. Ins. Co. v. Samsung Elecs. Am. Inc.*, No. 2:23-CV-01447-MJP, 2024 WL 4858232, at *2 (W.D. Wash. Nov. 21, 2024). The statute presumes a useful safe life of "twelve years after the time of delivery" and this presumption "may only be rebutted by a preponderance of the evidence." RCW 7.72.060(2). With limited exceptions not applicable here, *see* RCW 7.72.060(1)(b)(i)–(iii), if the product is more than twelve years past delivery, to prevail on a WPLA claim "plaintiffs have the burden of proving at trial, by a preponderance of the evidence, that the [product] had not exceeded its useful safe life at the time of the accident." *Pardo*, 40 F.3d at 1068 (citing RCW 7.72.060(2)).

Defendant argues that, because Plaintiff brings a product liability suit under the WPLA, its statute of repose also applies. Dkt. 22 at 5. Defendant asserts that it is undisputed that the useful safe life of the Broan fan at issue began in 2001 when Ms. Frankele purchased the newly constructed home with the fan installed. *Id.*; Dkt. 29 at 3. Since Broan, the manufacturer of the fan, offers no guidance about its useful safe life, Defendant argues that it falls under the statutory presumption of twelve years. Dkt. 22 at 6. Defendant further contends Plaintiff has presented no admissible evidence suggesting that the useful safe life of the Broan fan exceeds twelve years. Dkt. 22 at 5. Specifically, Defendant points out that Plaintiff did not serve any written discovery about the fan's useful safe life, nor did it request depositions of Broan's corporate representatives. *Id.* Defendants also note that Plaintiff has not offered any "expert opinions, estimates, general guidelines, or any fact or opinion otherwise relating to useful safe life." *Id.* at 6. Because Plaintiff failed to rebut the presumed twelve-year safe life, and the fire occurred in 2022—well after the fan's safe life expired—Defendant concludes that it cannot be held liable under the WPLA. *Id.* at 7.

Plaintiff responds that Defendant waived its right to the statute of repose defense by failing to pursue the defense in discovery. Dkt. 25 at 1. Plaintiff asserts that Defendant did not

ORDER GRANTING SUMMARY JUDGMENT - 7

present expert opinions about the fan's useful safe life or question Plaintiff's expert witnesses about the safe life during depositions. *Id.* at 8. Plaintiff further argues that "Broan did not produce documents regarding the useful safe life of the fan, because there is no useful safe life." *Id.* at 3. Plaintiff points to a November 15, 2016 deposition (in different litigation) of David Farchione, Broan's Director of Product Safety, who testified about the safe life of fans containing Jakel Motors such as the one at issue here. *Id.* Mr. Farchione testified:

> We don't normally put out a particular time just simply because we don't know the exact usage, these might be used in a restroom at a gas station and run a significant amount of time or it might be run in a bathroom, a powder room that is only run, you know, a half-hour a week or something when it's used, so we don't usually try to put a real amount of time on it. . . . they run for many, many years; they may run ten years, 20 years, 30 years, who knows.

*Id.*; *see* Dkt. 26-1 at 4–5. Lastly, Plaintiff argues that its own experts did not opine about the safe life because "[i]t is not plausible, nor cost-effective, to have an expert report address all potential defenses." *Id.* at 6.

The useful safe life of the fan at issue falls under the WPLA's presumption of twelve years. Defendant timely raised the statute of repose defense, *see* Dkt. 4 at 6, and it provided evidence that shows that the fan's useful safe life began in 2001, *see* Dkt. 23-5 at 3. Notably, Plaintiff's own evidence shows that there is no generic useful safe life for the fans because as Broan's Director of Product Safety testified, the usage of the fans can vary widely. *See* Dkt. 26-1 at 4–5; *see also Allstate Prop. & Cas. Ins. Co.*, 2024 WL 4858232, at *2 ("With no guidance from the manufacturer itself, the Court finds that the washing machine should have a presumptive 12-year useful safe life under the WPLA."). Once the twelve-year presumption applies, Plaintiff has the burden to prove, by a preponderance of evidence, that the fan's safe life was at least twenty-one years to cover the period between when the fan was first delivered to Ms. Frankele and when the fire broke out. *See Pardo*, 40 F.3d at 1068.

ORDER GRANTING SUMMARY JUDGMENT - 8

Plaintiff, however, has not produced any evidence that the fan's safe life exceeded the presumptive twelve years. *See* Dkt. 26; Dkt. 26-1; Dkt. 26-2. None of the expert opinions, declarations, or deposition transcripts discuss the safe life of the fan at issue. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations[.]"). Absent any evidence that would raise a genuine issue of material fact regarding the fan's safe life, Defendant is entitled to judgment as a matter of law. *See Benico v. Bridgestone/Firestone, Inc.*, No. CV-04-0292-LRS, 2005 WL 2757243, at *2 (E.D. Wash. Oct. 25, 2005) ("Plaintiffs have not produced an expert report or opinion that refutes the finding that the subject tire was not within its useful life at the time of the accident. . . . The court finds that the strict liability and negligent design/manufacturing claims against defendants . . . should be dismissed, based on the undisputed material facts of record.").

To the extent that Plaintiff seeks to introduce Mr. Shuck's declaration dated February 11, 2025, the Court strikes it as untimely. "Rule 26 provides that parties must disclose expert testimony 'at the times and in the sequence that the court orders.'" *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1072 (9th Cir. 2022) (citing Fed. R. Civ. P. 26(a)(2)(D)). When requesting late disclosures of expert witnesses, the moving party must show that their failure to timely disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, Plaintiff's only argument for late disclosure is that Defendant did not produce any documents or question Plaintiff's experts regarding the useful safe life of the fan. Dkt. 25 at 9–10. But Plaintiff, not Defendant, had the burden to timely gather evidence that shows the fan's useful safe life exceeded twelve years. *See Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (excluding expert's report because it was filed one-and-a-half months late

ORDER GRANTING SUMMARY JUDGMENT - 9

and plaintiff did not request for an extension of time). Plaintiff further asserts that the late disclosure is harmless because it can make Mr. Shuck available for a short deposition or the Court can grant a brief continuance to allow for limited discovery. Dkt. 25 at 10. The Court disagrees. The discovery deadline expired over three months ago, and Defendant would need to depose Mr. Shuck and prepare for trial scheduled for May 19, 2025. *See* Dkt. 21 at 1. Since Plaintiff has not shown that the delay was substantially justified or harmless, Mr. Shuck's declaration is stricken. *See Daniel v. Coleman Co. Inc.*, 599 F.3d 1045, 1049 (9th Cir. 2010) (excluding plaintiff's expert report because it "sought to substantiate deposition testimony that was taken early in the discovery process" and thus "[t]he untimeliness was neither justified nor harmless").

## V.  CONCLUSION

Accordingly, the Court GRANTS Defendant's motion for summary judgment (Dkt. 22) on the product liability claim against Defendant. The case is dismissed with prejudice.

Dated this 4th day of March, 2025.

Tiffany M. Cartwright
United States District Judge